THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DONALD C. REYNOLDS, Defendant-Appellant.

Second District No. 2—95—0126

Opinion filed November 15, 1996.—Rehearing denied December 18, 1996.

612

G. Joseph Weller, Patrick M. Carmody, and Paul Alexander Rogers, all of State Appellate Defender's Office, of Elgin, for appellant.

Joseph E. Birkett, State's Attorney, of Wheaton (William L. Browers and Martin P. Moltz, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE INGLIS delivered the opinion of the court:
Defendant, Donald C. Reynolds, appeals from the denial of his pe-

tition for post-conviction relief. We reverse and remand with directions.

On June 4, 1991, defendant filed a sworn *pro se* petition for post-conviction relief, contending that his trial counsel, Robert Boyd, had rendered ineffective assistance. Defendant alleged that Boyd had a private, in-chambers, conversation with the sentencing judge, Charles Norgle, immediately preceding the sentencing hearing. (Since that time, Judge Norgle has been appointed to the federal bench.) In this conversation, Judge Norgle is purported to have said that he would impose the maximum extended term on the defendant unless Boyd talked him out of it. Defendant alleged that Boyd did not inform him of the conversation until after he had pleaded guilty. Defendant further alleged that he had asked Boyd to provide an affidavit to verify the content of the purported *ex parte* conversation and that Boyd never responded.

Defendant asked leave to take an evidence deposition, and on April 30, 1992, the court entered an order allowing defendant to take Judge Norgle's deposition. On October 15, 1993, the parties informed the court that Judge Norgle had refused to submit to the deposition. In a letter dated October 12, 1993, Judge Norgle stated that he was "not aware of any issues which would require the calling of the judge who presided in the case as a witness." Judge Norgle also questioned the good faith of any subpoena that might be issued to compel his testimony. The parties then agreed to the alternative of having Boyd testify regarding the allegations in the post-conviction petition.

On June 3, 1994, a hearing on the petition was held in which Boyd testified that he did not specifically recall any conversation with Judge Norgle regarding defendant's sentencing hearing. Moreover, Boyd specifically denied the allegations in defendant's petition, stating, "Judge Norgle would not have said those things to me." Defendant objected, and Boyd interjected, "He didn't say those things to me." In ruling on the objection, the court stated:

> "I appreciate the objection but I'll state for the record that I don't think that that is speculation on the part of the witness [Boyd], a witness who had appeared before Judge Norgle on numerous occasions.
>
> I'll also state for the record so there is some basis for my comment here, I have known this witness [Boyd] for many, many years. I have also known Charlie Norgle for many, many years. I think the witness' statement is not a conclusion; it is a [*sic*] rather a very accurate statement of fact.
>
> But your objection is noted for the record."

Continuing his testimony, Boyd again denied having any discus-

sion with defendant regarding an off-the-record communication with Judge Norgle in which Judge Norgle revealed his intention to sentence defendant to a 60-year term of imprisonment. After Boyd's testimony, defendant was given leave to submit interrogatories to Judge Norgle to determine if he recalled any conversation with Boyd and what the substance, if any, was.

On June 28, 1994, defendant filed the original interrogatories with the court. On August 8, 1994, defendant informed the court that Judge Norgle refused to respond. In a letter dated July 15, 1994, Judge Norgle stated, "While I do not believe that I have any information that would be of assistance to you, I am not sure that it is appropriate for me to respond to the interrogatories." Judge Norgle asserted that a response to the interrogatories could violate the Code of Judicial Conduct (155 Ill. 2d R. 61 *et seq.*) and that he had a privilege against testifying about his mental processes. Judge Norgle concluded by stating, "There does not appear—based upon the information available to me—to be sufficient reason to overcome the general rule against a judge testifying about a prior proceeding." Defendant then asked the court to issue a subpoena for Judge Norgle. The court refused but suggested that defendant ask Judge Norgle to submit an affidavit verifying that he had no personal knowledge of any matters regarding this case other than what occurred on the record.

On January 4, 1995, defendant informed the court that Judge Norgle had not responded to his request for an affidavit and renewed his request for a subpoena for the judge. The court then ruled on defendant's petition, first taking notice of Judge Norgle's letters, which the court construed as a denial that any conversation occurred between Judge Norgle and Boyd. The court also agreed with Judge Norgle's position that it would be improper for him to testify regarding the circumstances surrounding the performance of his duties. Finally, the court denied defendant's petition, specifically finding that the alleged conversation between Boyd and Judge Norgle never occurred. Defendant timely appealed this ruling.

On appeal, defendant contends that the court erred by denying his request to subpoena Judge Norgle to testify and that he was denied a fair hearing on his petition due to the court's bias. We hold that the court erroneously denied defendant's request to subpoena Judge Norgle.

■ Before we determine defendant's issue, we must first answer the question of whether defendant was even entitled to request a subpoena of Judge Norgle. In view of the vulnerability of judges to compulsory service for the many cases they hear and the natural desire of criminal defendants to examine their judges, a party seek-

ing to subpoena a judge must first pass a reasonable threshold. The party should first be required to ask the court's leave to subpoena the judge. *People v. Ernest*, 141 Ill. 2d 412, 422 (1990). The court should then hold a hearing to ensure the following prerequisites are met. *People v. Palacio*, 240 Ill. App. 3d 1078, 1102 (1993).

> "First, the party subpoenaing the [judge] must specifically state the testimony the party expects to elicit from the [judge]. Second, that party must specifically state why that testimony is not only relevant, but *necessary* to the party's case. Finally, that party must specifically state the efforts that party has made to secure the same evidence through alternative means." (Emphasis in original.) *Palacio*, 240 Ill. App. 3d at 1102.

Considering the facts of this case, we find that defendant has crossed the *Palacio* threshold.

■ Turning now to defendant's argument, we agree that Judge Norgle was a material witness regarding defendant's allegations. In that respect, *People v. Montgomery*, 162 Ill. 2d 109 (1994), is instructive. There, the defendant alleged that his trial attorneys provided ineffective assistance because they convinced him to plead guilty to murder based on an improper *ex parte* promise to sentence him to life imprisonment. *Montgomery*, 162 Ill. 2d at 111. The court acknowledged that the post-conviction judge has wide discretion to limit the type of evidence he or she will permit. *Montgomery*, 162 Ill. 2d at 113. The court held, however, that the post-conviction court abused its discretion in limiting the cross-examination of the trial judge, as his testimony "went right to the heart of the controversy," which was "whether [the trial judge] made an inappropriate promise to defendant during an inappropriate *ex parte* communication." *Montgomery*, 162 Ill. 2d at 113.

We find the reasoning of *Montgomery* to be persuasive in this case. Here, the central allegation was whether Judge Norgle made an inappropriate *ex parte* remark to Boyd. By refusing to issue a subpoena to secure Judge Norgle's testimony, testimony which will go "right to the heart of the controversy," the court abused its discretion. Without this testimony, the court cannot reasonably conclude that the conversation did not occur, as Judge Norgle's letters shed no light on the main issue. See *Montgomery*, 162 Ill. 2d at 113. Accordingly, we hold that it was error for the court to refuse to issue a subpoena to Judge Norgle.

■ The State contends that the court correctly refused to issue a subpoena to Judge Norgle. The State claims that the court had made a credibility determination concerning Boyd's testimony and Judge Norgle's letters, which, according to the State, indicated that Judge

Norgle had no private, *ex parte* conversation with Boyd about defendant's sentence. Moreover, the State asserts that Judge Norgle's testimony would have been cumulative to Boyd's. We disagree.

Although the court had the opportunity to determine Boyd's credibility and may have believed his testimony, Judge Norgle's letters do not foreshadow what his testimony will be. His letters merely assert that he does not *believe* that he has any relevant information regarding defendant's post-conviction claim. Without Judge Norgle's testimony, it is impossible to say that it is cumulative to Boyd's. Thus, we reject the State's contention on this point.

■ We also address the concerns which Judge Norgle raised in his letters to defendant's post-conviction counsel. In both letters, Judge Norgle asserts that he does not believe that he has any information which would be relevant to the disposition of defendant's claims. We respectfully note that it is not for the witness to determine whether his or her testimony is relevant to the matter at hand, but for the judge presiding. To accept this argument would allow any witness to disqualify himself on the grounds that he did not believe he had relevant information. Thus, we cannot allow Judge Norgle's belief that he has no relevant information about defendant's claim to determine the result in this case.

■ Judge Norgle also expressed concern that his testimony might violate the Code of Judicial Conduct (155 Ill. 2d R. 61 *et seq.*). Specifically, he points to Canon 1 (155 Ill. 2d R. 61), regarding independence and integrity, and Canon 2 (155 Ill. 2d R. 62), regarding the avoidance of impropriety and the appearance of impropriety. We do not see how a properly focused and limited examination would conflict with his duties under the Code of Judicial Conduct. Therefore, we do not find Judge Norgle's concerns on this issue sufficient to preclude his testimony in this matter.

■ Judge Norgle's final concern is that he may be forced to reveal his mental processes, to which he asserts that he has a privilege. The issue raised by defendant is simply whether Judge Norgle had an *ex parte* communication with Boyd immediately before defendant's sentencing hearing, and the substance, if any, of that communication. Defendant's petition simply raises no issue that would require Judge Norgle to testify about his mental processes in reaching a judicial decision.

For the foregoing reasons, we hold that the court erred by refusing to issue a subpoena to compel Judge Norgle's testimony. Although we are mindful of the burden which compliance with a subpoena would place upon Judge Norgle and his court, we note that judges may be called as witnesses. See *Montgomery*, 162 Ill. 2d 109. We also

note that the record reflects that Judge Norgle rejected defendant's offer to take his deposition, which we assume would have been at a time and place of his convenience. Judge Norgle also refused to answer the following two interrogatories:

"1. On or about November 10, 1981, prior to accepting the plea of guilty and the sentencing hearing of [defendant] in regard to the above captioned matters[,] did you have an in camera conversation with Robert Boyd, counsel to [defendant] in regard to the sentences to be imposed on [defendant]?

\*\*\*

2. If the answer to interrogatory #1 is yes, what[,] to the best of your recollection[,] did you say to Mr. Boyd?"

We find these two interrogatories to be relevant and to the point. In addition, Judge Norgle also failed to respond to defendant's subsequent request for an affidavit. Therefore, under the circumstances of this case, we find that Judge Norgle should be required to appear and testify. Accordingly, pursuant to Supreme Court Rule 366 (155 Ill. 2d R. 366), we order that the court issue a subpoena for Judge Norgle's testimony.

In light of our disposition of defendant's first issue, we need not consider his claim of deprivation of a fair hearing, as by our disposition, his post-conviction hearing is not concluded. We note, however, that Judge Jorgensen's remark, quoted above, about her long association with both Judge Norgle and Boyd, may raise questions concerning her impartiality. Therefore, in the best interests of the judicial system and of the defendant, pursuant to Rule 366 (155 Ill. 2d R. 366), we order that defendant's post-conviction hearing be assigned to another judge.

For the foregoing reasons, we reverse the order of the circuit court of Du Page County and remand the cause for further proceedings consistent with this order.

Reversed and remanded with directions.

DOYLE and HUTCHINSON, JJ., concur.